The next argued case is number 172381, Telefonaktiebolaget Erickson against TCL Corporation. Ms. McComas. Thank you, Your Honor. May it please the Court. We represent Erickson, who is the owner of U.S. patent number 6029052. This appeal focuses narrowly on Claim 18 of the 052 patent and specifically one reference, the Jensel reference, relied upon by TCL and the Board to find Claim 18 unpatentable, as obvious. Now we think the Board was wrong to rely on Jensel for two reasons. First, the Board violated its own rules and unreasonably and arbitrarily allowed TCL to introduce late filed information going to the date the Jensel article was publicly available. Second, even considering the Jensen article, the Board's obvious misfinding is based on a fundamental misreading of the reference that, when corrected, cannot stand. So I want to focus first on the rule and the Board's failure to follow its own rules. We recognize that the Board has discretion in implementing its rules, but that discretion is not unfettered. It has to be reasonable. It can't be arbitrary. Counsel, I'm puzzled by your raising an issue of procedure first, where the issue was abuse of discretion rather than getting to the merits. But on the merits, when I look at the Jensel, it provides that phase shifters can be assembled by means of frequency dividers. Isn't that basically the invention? The invention in the M18 patent does use a frequency divider. That's what made it unique. You're right that the Jensel article does mention frequency dividers, but it doesn't apply a frequency divider. It applies a phase shifter. Your Honor, if I can take you very quickly, I'll jump to that since you asked. If you look at the section as a whole, what the Board found was that figure 2, which we all agree, I think everyone here agrees, that figure 2 on its face doesn't tell you what kind of phase shifter should be used. You have to look to the rest of the publication. If you look at the rest of the publication, there are three things you need to look at, not just the language of phase shifter. Although the language of phase shifter, which you're referring to at APPX 1186, talks about three things. It talks about conducting components, and it rules those out completely. It talks about a frequency divider, and it talks about some advantages and a big disadvantage to using a frequency divider. Then it goes on to talk about phase shifters. The rest of that paragraph talks about phase shifters and concludes that phase shifters are suitable. That's not the only thing we look at here. We have to look at the reference as a whole. If you look in two other places, both prior to figure 2, just ahead of figure 2 at APPX 1183, it talks about direct mixing receivers, which is what this is. It's what Jensel's disclosing. Under the direct mixing receivers, it says the mixers are controlled by a complex LO signal, the frequency of which is in the center of the radio signal to be received. The second thing we all agree on here is that your frequency divider requires two times the signal when it starts. It divides it in half, and therefore it's the right frequency when it goes through the mixer. Here, if the frequency, the complex LO signal, is in the center of the radio signal to be received, that cannot be a frequency divider. What Jensel is talking about here, under direct mixing receiver, and what it must be talking about in figure 2, is a phase shifter, not a frequency divider. You're discussing what the reference discloses? Correct. That's a question of fact. We give substantial evidence deference to the board on questions of fact. We're not discussing that, deciding it anew. I agree. Here, you can look on the face of the reference, and we're basically applying English. We're reading the document. What the board relied upon... It's a translation from the German. It is, but we've all agreed to this translation. We're looking at the English. We've accepted that this is appropriate, and this is right. Now I'm applying English. I believe the board relied on, basically, the expert's testimony of what this says. We needed an expert to tell us what a frequency divider is, and that it's 2x the others. The rest of it, you can find a layperson can figure out simply by reading this. An expert's testimony that contradicts the plain language of the reference shouldn't be accepted. Let's go one more. If you look at the LO emission and LO ghosting effect, that's at the bottom of PPX 1185. That's the page after Figure 2. We have one more that helps us. There, it's talking about the local oscillator signal experience is no noteworthy damping, but it says, since the frequency of the local oscillator is within the passband, that also is necessarily talking about something within the passband, not outside of it. That's another clue that we have, that this is really a phase shifter and not a frequency divider. The board, in its decision, actually found that Figure 2, with the text in GENFL, is disclosing a frequency divider instead of a phase shifter. On its face, that's wrong. Then you've got the next question, which I think you were raising, Judge Lori, from the board. It mentions frequency divider, but we know from KSR and its progeny that you have to have more than simply a mention. You have to have a reason to take the phase shifter, the RC phase shifter, and replace it with the frequency divider. I would submit there's nothing in this record that gets you to that finish line. The motivation to combine is not there. That's the argument on the merit. Of course, if we're right on the procedural issue, you don't get there. That's why we raise it first. You never get there because GENFL never comes in if we're right on this issue. We do believe, in this case, that there's been a little bit... We do require some guidance. The board needs some guidance from this board on what the rules mean. There are two rules in play here. The first is 42.123B. 42.123B says, if you're going to offer supplemental information more than 30 days after institution, you have to have a really good explanation. You have to explain why the supplemental information reasonably could not have been obtained earlier, and that consideration of the supplemental information would be in the interest of justice. Here... Excuse me, I want to do the second rule too. 42.25B says, when you notice that relief needs to be sought, you have to be prompt about it. If you look at the board's decisions below, with the exception of the current one, all of them really focus on these rules in tandem. That's important because here, TCL's argument is, I needed time to get my affidavit in place and get it ready and put a pretty bow on it and make it perfect before I brought this to the board's attention. The reality is, the board in this case never even looked at 42.25B. They only ruled on 42.123B. They went through the elements there, and that's very important because here, prompt, when to raise it, when to bring it to our attention, had to be much earlier. Even under the board's findings, and even under TCL's arguments, they knew about this by April 14th. They had in writing, according to the board's decision, they had in writing from Ms. Michelle a commitment to put this in an affidavit and to testify by April 21st. They waited until well after the patent owner's brief was filed. April 21st is a very critical date, by the way, because we're sending letters to them... Didn't they argue that there were problems involved in getting the translations perfected? That's certainly what they say. And then I thought the overall flow of the affidavit was that there was a lot of just difficulty getting people to agree to come forward and getting permissions for the person to be able to give an affidavit. That's certainly what they say. There were some that they tried that were denied, I believe. They went to another library first, as I recall, the record, and someone said, I don't want to give an affidavit. That's true. So there's a certain amount of time involved in trying to get the folks in Germany to want to participate in this proceeding. That's true. I would submit to you that... Doesn't that account for some of the delay? I would suggest it shouldn't, because when a petitioner comes to the court, they know these are the rules. They know what they're going to have to prove. They should have been looking at this from the beginning. But let's assume that's a harsh argument, and they should have some ability to clean it up after we object. Because we objected within 10 days of institution and said, there's a problem with your evidence. So then their testimony, their affidavits say they went along and started getting information. What we know, again, is that by April 21st, at the absolute latest, they had somebody willing to give an affidavit. And then there's the excuses. It took us a while to get it translated, get it in the right order. There's an interesting statement that comes in the Appelese brief that's also in the record that Ms. Michelle testified below that she didn't know she was going to have to come give a deposition until June of 2016. And that's at the Appelese brief at... Well, the Appelese brief said that's in the appendix at 2532, but it's actually at 4972. I think it was a typo. So there's a lot of confusion in there as to what really happened when. What's important for the perspective of this court is that in the meantime, on April 21st, Erickson's counsel is sending a letter to TCL's counsel trying to get a deposition of the first person they said was their witness. And they knew at that point they had somebody else that was going to come testify. We're talking to them about changing our dates and getting extensions. We send them a letter on April 21st that says, we're not going to amend. Let's move forward, get our depositions done and get the patent owner's response done. And we come up with a date that we agreed to with them as May 23rd. None of that likely would have happened if we had known there was another witness involved. We could have avoided all of this. There's substantial harm here because we had 35 pages of our brief dedicated to an issue that they changed in the middle of the case. And in district court, we see that type of thing happen all the time because there's time to change. You can amend your complaint because people have time to do more discovery. But in the patent office in a PTAG proceeding, it doesn't work that way. It's very front-end loaded and it's front-end loaded on purpose. You have to come with your evidence mustered. And there are rules that allow you to fudge on that a little bit, but it has to be in very limited circumstances. And when you're playing a game where basically it's like the petitioner amended their petition after we had filed our response. And we got to respond to what was in the amended petition, but we lost a lot of pages in our brief. And if there's any argument that our obviousness briefing was weak below or we didn't win the arguments against the other expert, we had 35 less pages to do it than we should have. Let's hear from the other side on this point, and we'll save you a rebuttal time. Ms. Goldenberg. Thank you, Your Honor, and may it please the court. Julie Goldenberg on behalf of the appellees. I would like to begin with discussing the merits, in particular Gentile's disclosure in figure three, or figure two. Both parties agree that figure two on its own does not disclose any particular type of phase shifter. And Erickson is wrong to suggest that Gentile's text somehow excludes a frequency divider. Our expert explained that with a frequency divider, you have two different local oscillation signals. The local oscillation signal output is half the frequency of its input. Now, Erickson relies on a line from Gentile, particularly found on page appendix 1183, which opposing counsel quoted to you. It's, the mixers are controlled by a complex LO signal, the frequency of which is in the center of the radio signal to be received. They argue this excludes a frequency divider. But the text is talking about the local oscillation signal that the mixers are controlled by, which is the output of the phase shifter, not the phase shifter's input. The phase shifter's output signal will be at the center of the frequency to be received by the mixers, because if you look at figure two, there's a line that goes directly from the phase shifter to the mixers. So no matter what kind of phase shifter you use, including frequency dividers, that'll be the case. Our expert explained this. We fully argued it to the board. And Erickson's arguments in both IPRs are premised on Gentile's figure two, excluding this frequency divider. The board's interpretation of Gentile as a question of fact, indeed what the prior art teaches, is reviewed by this court for substantial evidence. Although Erickson has offered one interpretation of Gentile, TCL's expert has offered another. Substantial evidence supports the board's decision to agree with TCL's expert's interpretation of Gentile. Unless the court has any further questions regarding Gentile's disclosure, I can turn to the procedural aspect of the appeal. Erickson has criticized the board for abusing its discretion and even considering the supplemental information. The board's rules permit supplemental information to be introduced, specifically the regulation that opposing counsel quoted, 37 CFR 41.123. As long as the proponent demonstrates why the supplemental information reasonably could not have been obtained earlier, and that consideration of the supplemental information would be in the interest of justice, TCL demonstrated why the information could not reasonably have been obtained earlier. It showed that as soon as Erickson challenged the date of Gentile, TCL diligently began looking for supplemental information. TCL worked with German counsel. They identified numerous individuals and librarians with knowledge of the public availability. Remember, this isn't a thesis. This was a magazine article that was published widely. In fact, there's some evidence that there were as many as 16,000 copies out there. TCL even contacted- Was it an attorney argument? It was an attorney's affidavit that put that information in the record? Yes, it actually came from information from the editor-in-chief. The hearsay? Yes. And the hearsay, and there was a hearsay objection to the evidence in the record? That is correct, which is why TCL eventually didn't rely on it. I'm just calling you because what you're saying was a record was on the basis of an attorney affidavit. That is correct, Your Honor. Attorney affidavits don't cut the mustard in this court. Not on the priority date, but the affidavit does cut the mustard for demonstrating- I realize that the publication was widely disseminated, it appears to me, but there's no predicate in the record to supporting those facts other than an attorney affidavit. Yes, I agree with Your Honor on that. And it was hearsay, and the hearsay was objected to. And that issue is taken off the table anyhow. That is correct, Your Honor. But the point here was just that TCL was working diligently to try to prove a fact that it appeared to be true. It had all of this information coming in, and it needed to get the evidence to reach the board in the court's level of admissibility. And all of that information was considered by the board. We have a nine-page opinion by the board where it explains- So your argument essentially is that if the information was indeed prior printed publication and it was publicly accessible, there was any specific duty to have it in the mix. Yes, Your Honor. And that goes directly to the interests of justice part of 37 CFR- So there's no argument from your adversary on that aspect of the regulation? Yes. And just the response to that is simply that the board was acting within the interests of justice in letting this come in because the board is just searching for the truth here. And ultimately, this information seemed to support a fact that actually was true. So the board certainly didn't abuse its discretion, which is the standard here, in applying its own procedures, which allow it to admit supplemental information. And we have a reasoned nine-page opinion from the board explaining why it ruled that way. The board also permitted Erickson to file a supplemental brief and a reply brief. And Erickson had an opportunity that it took to take Ms. Mitchell's deposition. Erickson has failed to identify any prejudice from the admission of this information. It never asked the board for an opportunity to amend its claims in view of the supplemental information. The board very well might have allowed it. The board seemed more than willing, in its opinion, to make sure that there was no prejudice to Erickson in view of the supplemental information. But that was never before the board, so it shouldn't be considered by this court. Your Honors, this court reviews the board's application of its procedural rules for an abuse of discretion. Erickson has failed to demonstrate that the board abused its discretion in applying its own procedural rules for supplemental information. For these reasons, as well as the reasons articulated in our brief, the judgment of Unless the court has any other questions, I'll return the rest of my time. Thank you. Thank you. Just quickly, Your Honors, on the direct mixing receiver at Appendix 1183, I understand how TCL is reading that. You can't read it that way and apply English, which we've decided is the controlling in this document. The modifier, the comma comes, for that purpose, the mixers are controlled by a complex LO signal, comma, the frequency of which is in the center of the radio signal to be received. You can only read that to modify the complex LO signal, not the mixer. It's just plain English in the document. I want to go real quickly to just a few things that were said. We were permitted supplemental briefing only on the new evidence that was coming in. We weren't allowed to go back and make up the 35 pages. We made that point to the board in our opposition to them asking for the supplemental that, hey, our patent owner's response is already in. We weren't allowed that. I also want to point out what's important. You were permitted supplemental briefing on the merits. Isn't that right? No. Just on the issue of the public availability based on the new evidence. Our ability to respond was limited to that. We had 10 pages to respond to Ms. Michelle's affidavit and testimony. But the merits were argued, were they not? Of this reference? Yes, but our patent owner response, we spent 35 pages of it responding to the original. The original evidence they put in would have shown a date of October 1996. That's the other point I wanted to make. This is a journal. Even if it was widely disseminated, when it came out wasn't always consistent. We all know from law review days, it may or may not come out in May or June. It may come out at a different time, and it often did. You can see that in the... I see my time is up. If I can just quickly close this up. A lot of times, those come in at different dates. What we responded to was a swear behind using the October 1996 date because that's what we understood was the issue at the time. Nobody previewed to us there was going to be new evidence showing a different time. We spent half of our merits brief addressing specifically the issue of a swear behind that became moot because they had new evidence that they didn't disclose until our brief was filed. We were never allowed to respond to that. How does that fit into the exercise of discretion by the board and whether or not to admit the evidence? I think it's an abuse of discretion to allow that type of briefing certainly after the patent owner response has been filed. To allow that supplemental evidence in a way that prejudiced us. I actually think the rule is more stringent than that. Because the rule requires... What would your additional argument have been? It would have gone to accessibility? Some of the things we're discussing here, we would have had more pages to address the merits of the obviousness. We had to do that in half a brief rather than a full 14,000 words. We probably spent 7,000 words on swear behind because without it, there was no genital. If we were right on the swear behind, there was no genital, so there was nothing else to respond to. We would have had a full brief to respond to the obviousness argument that we're now being... It's a little bit having to fight that issue with one hand tied behind our back. Then the board makes decisions based on the evidence and the arguments we made in that brief which were half the arguments we could have made and now we're subject to an abuse of discretion standard on appeal. If there are no further questions. No more questions. Thank you. Thank you both. The case is taken under submission.